IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** § | | **Chapter 11** |
| § | | |
| **EPIC COMPANIES, LLC,** *et al.*, § | | **Case No. 19-34752** |
| § | | |
| Debtors[1]. § | | **Jointly Administered** |
| § | | |
| **GOLIATH OFFSHORE HOLDINGS PTE, LTD,** § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | **Adversary No. 21-03453** |
| § | | |
| **TRITON EQUIPMENT HOLDINGS, LLC and WHITE OAK GLOBAL ADVISORS, LLC.** § | | |
| § | | |
| Defendants. § | | |

**SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

Goliath Offshore Holdings PTE, LTD ("Goliath" or "Plaintiff"), a creditor in the bankruptcy cases of Epic Companies, LLC, *et. al* (each a "Debtor" and collectively, the "Debtors"), files this its Second Amended *Complaint For Declaratory Judgment* (the "Complaint") against Triton Equipment Holdings, LLC ("Triton") and White Oak Global Advisors, LLC ("White Oak" and together with Triton, the "Defendants"), and alleges the following:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Epic Companies, LLC (1473), Epic Diving & Marine Services, LLC (2501), Epic Applied Technologies, LLC (5844), Epic Specialty Services, LLC (8547), Epic Alabama Steel, LLC (6835), Epic San Francisco Shipyard, LLC (5763) and Zuma Rock Energy Services, LLC (1022). The address of the Debtors' headquarters is: 1080 Eldridge Parkway, Suite 1300, Houston, Texas 77077.

1

## SUMMARY[2]

1. Plaintiff seeks a declaration that its liens on a SAT6/HOSS2 Saturation Diving System (the "SD Unit") previously attached to the M/V NOR Goliath (the "Vessel") remain and are first priority liens, all in accordance with the provisions of this Court's November 15, 2019 Sale Order authorizing White Oak's purchase of substantially all of the Debtors' assets.

2. Plaintiff chartered the Vessel to Magrem Investments, Ltd ("Magrem"), via a Bareboat Charter, retaining a maritime lien on the Vessel's equipment including the SD Unit. Magrem sub-chartered the Vessel to Ranger Offshore, Inc. ("Ranger"), and then Debtor Epic Companies, LLC acquired Ranger's interest in the subcharter. Epic and Ranger also guaranteed Magrem's obligations under the Bareboat Charter via Charter Guarantees.

3. Plaintiff timely filed proof of claim # 33, asserting a claim against Epic partially secured by a valid lien on the Vessel's equipment, including the SD Unit.

4. On November 15, 2019, this Court entered a Sale Order approving White Oak's purchase via credit bid of substantially all of the Debtors' assets. The Sale Order carved out an exception from the free and clear sale, preserving validly asserted liens on the SD Unit.

5. Additionally, after the Vessel was arrested in connection with the non-payment of "necessaries" incurred by Epic, Goliath paid (and took assignment of) over $2 million in such liens that prime the liens of White Oak.

6. For the reasons set forth herein, Plaintiff requests that this Court enforce the Sale Order, and find that Plaintiff's liens on the SD Unit are valid and first in priority, notwithstanding Debtors' sale of assets to White Oak.

---

[2] The capitalized terms contained in the Summary and not defined in the Summary have the meaning ascribed to them in the Complaint.

29976803v.3 155814/00001

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This matter is brought as an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001(2).

8. This Court has jurisdiction to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §2201(a), which grants the Court "the power to declare the rights and other legal relations of any interested party seeking such declaration." *Sommers v. Aguirre* (*In re Santoyo*), 540 B.R. 284, 289 (Bankr. S.D. Tex. 2015).

9. Pursuant to the Sale Order, this Court retained jurisdiction to hear and determine this dispute. *See* Sale Order at ¶44 ("If requested to do so at a later time, the Court shall [] retain jurisdiction [] to determine the validity, extent, and priority of any such valid lien.").

10. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

11. Pursuant to Local Bankruptcy Rule 7008-1, the Plaintiff consents to the entry of final orders and a judgment by the Bankruptcy Court in this adversary proceeding.

## PARTIES

12. The Plaintiff is a private company, organized under the laws of Singapore. The Plaintiff's mailing address, solely for the purposes of notice and communications, is c/o Phelps Dunbar, LLP, 365 Canal Street, Suite 2000, New Orleans, LA 70130-6534, Attn: Miles P. Clements, and P.O. Box 2727, Mobile, AL 36652-2727, Attn: Danielle Mashburn-Myrick, and Jackson Walker LLP, 1401 McKinney Street, Suite 1900, Houston, Texas 77010, Attn: Bruce J. Ruzinsky and Matthew D. Cavenaugh.

13. Defendant, Triton Equipment Holdings, LLC, is a private company, organized under the laws of Louisiana. The Defendant's mailing address, solely for the purposes of notice

and communications, is c/o Carver, Darden, Koretzky, Tessier, Finn, Blossman & Areaux, LLC, 1100 Poydras St., Suite 3100, New Orleans, LA 70163, Attn: David F. Waguespack.

14. Defendant, White Oak Global Advisors, LLC, is a Delaware limited liability company. The Defendant's mailing address, solely for the purposes of notice and communications, is c/o Paul Hastings, LLP, 600 Travis St., 58th Floor, Houston, TX 77002, Attn: James Grogan and Samuel S. Cooper. The Defendant may also be served via its registered agent: Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th St., Suite 620, Austin, Texas 78701-3218.

## FACTUAL BACKGROUND

A. **The Charters and Charter Guarantees**.

15. In April 2019, Plaintiff bareboat chartered the Vessel to Magrem, and Magrem continued a prior time charter of the Vessel to Epic. Such bareboat charter (the "Bareboat Charter", a copy of which is attached as Exhibit "C") includes, among other things, Plaintiff's retention of a lien on the Vessel's equipment:

> The Owners to have a lien upon all equipment onboard the Vessel (to be a maritime lien to the extent permitted by law) . . . .

*Bareboat Charter* at Sec. II, ¶ 18 (emphasis in original).

16. The original time charter was between Magrem and Ranger in 2017. Attached as Exhibit "A" is a copy of that 2017 time charter. It was extended via emails exchanged between Mike Mulder at Ranger and Christos Charalambous on behalf of Magrem on July 18-19, 2018. Ranger's time charter interest was acquired by Epic later in 2018. In an April 24, 2019 email from Mike Mulder at Epic to Christos Charalambous on behalf of Magrem, Epic requested that prior to executing a new time charter with Magrem that would utilize the same form as the 2017 time charter between the parties, both Magrem and Epic should agree that the time charter is currently

4

in effect. By reply email dated April 25, 2019, Mr. Charalambous on behalf of Magrem agreed to that request. A copy of that email correspondence is attached as Exhibit "B".

17. Magrem also chartered the Vessel from Plaintiff pursuant to bareboat charters dated June 23, 2017 and February 28, 2018 (the "Prior Bareboat Charters"), both of which contain the same lien retention language.

18. Also in April 2019, Epic executed and delivered to Plaintiff a guaranty agreement (the "Charter Guaranty"). A copy of the Charter Guaranty is attached as Exhibit "D". Pursuant to the Charter Guaranty, Epic agreed to guarantee the obligations imposed on Magrem by the Bareboat Charter's terms and conditions:

> The Guarantor, in consideration of the Owner agreeing to charter the Vessel to the Bareboat Charterer pursuant to the Bareboat Charter and for other good and valuable consideration, *hereby irrevocably and unconditionally guarantees, to the Owner (as primary obligor and not merely as surety) the due and punctual performance and observance by the Bareboat Charterer of all terms and conditions of the Bareboat Charter* and of all its obligations under or pursuant to the Bareboat Charter and the full payment (following the due date therefor) of all hire as specified in Box 22 and Clause 11 of the Bareboat Charter (hereinafter defined as "Hire) or any other amount owing pursuant to the Bareboat Charter and payable now or in the future to the Owner by the Bareboat Charterer thereunder.

*Charter Guaranty, Sec. 1.1*.

> The Charter guarantee from EPIC Companies, LLC (the "Charter Guarantor") as guarantee for full performance of all the Charterers' obligation under this Charter and *the full performance of the Charter Guarantor's and Charterer's obligations toward third parties with claims which is capable of forming a lien or a claim against vessel*.

*Barecon 2001*, ¶ 27 (emphasis added).

19. Epic's predecessor Ranger provided the same substantive form of charter guaranty to Goliath on June 23, 2017.

20. The foregoing Bareboat Charter and Charter Guaranty sought to amend and extend, and in fact did amend and extend, the longstanding use of and relationship with the Vessel by Epic

5

and its predecessor entity (Ranger), which relationship dates to at least 2017, consistent with the Prior Bareboat Charters (as discussed in paragraphs 15-17, *supra*).

21. Goliath's rights in and entitlement to assert a lien and privilege over the SD Unit date back to no later than June 23, 2017, and thus predate any rights of White Oak.

22. On June 23, 2017, Epic's predecessor entity (Ranger) entered into a time charter for the Vessel with Magrem, which that same date had bareboat chartered the Vessel from Goliath. Epic's predecessor (Ranger) further executed a Charter Guaranty in Goliath's favor, substantially identical in form and substance to that executed in Goliath's favor by Epic in 2019.

23. On February 28, 2018, Goliath and Magrem renewed the bareboat charter for the Goliath. In July 2018, Epic's predecessor (Ranger) expressed its intention to maintain its rights to employ the Vessel by asking that the time and bareboat charters be extended and honored for the 2018 Gulf of Mexico platform decommissioning season. The time and bareboat charters were extended.

24. Epic again continued the hire of the Vessel for 2019, continuing and/or extending the prior charter and guaranty agreements entered into by Epic and Ranger.

25. At all relevant times, Epic expressed its intention to remain bound by its obligations under the charters and Ranger guaranty dating back to 2017, and in fact did so.

26. At all relevant times, Epic acted through its officer and authorized agent, Mike Mulder, who also had been an officer and authorized agent of Ranger, and who had full authority to bind Epic to the terms agreed to, obligations assumed, and rights and privileges granted by Ranger extending back to 2017.

B. **Bankruptcy Filing**.

27. On August 2, 2019, an involuntary petition under chapter 7 of the Bankruptcy Code (the "Involuntary Petition") was filed against the Debtors in the United States Court for the Eastern

District of Louisiana (the "Louisiana Bankruptcy Court"). On August 26, 2019 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Court"). The chapter 11 cases were consolidated for procedural purposes only and jointly administered.

C.   **Goliath's Proof of Claim**.

28.   On November 5, 2019, Plaintiff timely filed Proof of Claim No. 33 (the "Proof of Claim"), asserting a partially secured claim of $7,162,649.28 for "Unpaid Charter Hire" and certain other claims against the Vessel. The Proof of Claim asserts Plaintiff's perfected lien in the Vessel's equipment—including the SD Unit attached to the Vessel.

D.   **Turnover Complaint**.

29.   Also on November 5, 2019, Debtor Epic Diving & Marine Services ("Epic Diving") filed a complaint against Plaintiff, initiating adversary proceeding case No. 19-03663, styled *Epic Diving & Marine Services, LLC v. Goliath Offshore Holdings PTE, LTD,* (the "Prior Adversary Proceeding") seeking the turnover of the SD Unit, which at the time remained "welded to the deck of" the Vessel. On December 9, 2019, Plaintiff filed an answer to Epic Diving's complaint, asserting, as it does here, Plaintiff's lien "in and to the [SD Unit]." [Adv. Case No. 19-03663, Docket No. 7, ¶ 24]. No other pleadings were filed in the Prior Adversary Proceeding. In view of the removal of the SD Unit from the Vessel by or on behalf of Epic, and this Court's approval of Debtors' sale of assets described below, the relief requested by Epic Diving in the Prior Adversary Proceeding is now moot.

E.   **Section 363 Sale**.

30.   On November 15, 2019, this Court entered the *Order (I) Approving Successful Bidder's APA and Authorizing the Sale of Assets Outside the Ordinary Course of Business, (II) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens,*

7

*Claims, Encumbrances, and Interests, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* (the "Sale Order") [Docket No. 418], approving the sale of substantially all of the Debtors'[3] assets to White Oak. As detailed in the *Declaration of Kelton C. Tonn in Support of Chapter 11 Petitions and First Day Pleadings* (the "Tonn Declaration") [Docket No. 16], the sale plan was as follows:

> The Debtors [] proposed a sale of substantially all of their assets in a 65-day process. . . . [White Oak] is the proposed stalking horse bidder and will credit bid $48,900,00 of its pre and postpetition debt and assume $40,000,000 of the indebtedness evidenced by the Prior Junior Loan Agreement . . . Upon closing the sale of the Purchased Assets, White Oak will then sale certain of the assets to Alliance Energy Services, LLC for a cash purchase price of $40 million and an assumption of $35 million of the indebtedness evidenced by the Prior Junior Loan Agreement, among other terms, in a separate transaction financed by White Oak, and is in discussions regarding the sale of other portions of the assets to other third parties on terms to be agreed.

*Tonn Declaration* at ¶¶ 8-9. The sale closed on January 13, 2020. *See Notice of Closing of Asset Sale* (the "Sale Notice") [Docket No. 536], filed January 16, 2020.

31. The SD Unit was included in what White Oak (or its affiliate White Oak Purchaser, LLC) purchased pursuant to the Sale Order. On or about January 14, 2020, White Oak Purchaser, LLC sold the SD Unit to Triton.

32. The Sale Order separately addressed the Plaintiff's lien on the SD Unit.

> \*\*Notwithstanding anything in this Sale Order to the contrary, ***any and all valid liens asserted and that may be validly asserted against that certain saturation diving unit installed on the M/V NOR GOLIATH (which saturation diving unit is the subject of Adversary Proceeding No. 19-3663) shall remain on such saturation diving unit in the same order of priority as exists under applicable non-bankruptcy law which shall not be affected by any removal of the saturation diving unit from the M/V NOR GOLIATH***, absent further court order. . . . If requested to do so at a later time, the Court shall [] retain jurisdiction [] to determine the validity, extent, and priority of any such valid lien.

---

[3] The "Sellers" were made up the following Debtor entities: Epic Companies, LLC ("Epic"), Epic Applied Technologies, LLC ("Epic Applied"), and Epic Diving & Marine Services, LLC ("Epic Diving & Marine"). *Sale Order* at Sec. III(H).

29976803v.3 155814/00001

*Sale Order* at ¶ 44 (emphasis added). The Sale Order carved out an exception to the free and clear nature of the sale, preserving Plaintiff's interest *and priority* in the SD Unit, notwithstanding the asset sale to White Oak, and not withstanding removal of the SD Unit from the Vessel.

F.   **Maritime Liens**.

33.   Further, and independently of the rights vested in Goliath set forth above, under governing and controlling maritime law, the SD Unit was at all relevant times an appurtenance of the Vessel.

34.   Under governing and controlling maritime law, maritime liens for "necessaries" under the Commercial Instruments and Maritime Liens Act, 46 U.S.C. § 31301, *et seq.* ("CIMLA") attach to not only the Vessel but also to all appurtenances of the Vessel.

35.   Maritime liens for "necessaries" provided to the Vessel follow the appurtenances of the Vessel, including but not limited to the SD Unit, even after any appurtenances have been removed from the Vessel.

36.   In the matter entitled "*Arc Controls, Inc. v. M/V Nor Goliath et al.*," United States District Court for the Southern District of Mississippi, Docket No. 1:19-cv-00391-LG-RPM (the "Arc Controls Litigation"), the Vessel was arrested and subjected to multiple claims totaling millions of dollars, all on account of Epic's failure to pay the claimants in the Arc Controls Litigation.

37.   All claims in the Arc Controls Litigation asserted against the Vessel *in rem* included claims against all appurtenances of the Vessel, including but not limited to the SD Unit.

38.   Goliath was not a party to any pre-arrest contract with any of the lien claimants in the Arc Controls Litigation, nor was Goliath personally liable to any of the lien claimants for the debts owed to those claimants by Epic. Nonetheless, in order to secure the release of the Vessel,

Goliath was required to pay substantial amounts to resolve the lien claims occasioned by Epic's failure to pay those claims.

39. More specifically, Goliath has paid the following amounts to resolve and acquire the maritime lien claims against the Vessel asserted in the Arc Controls Litigation by the following lien claimants: Atlas Decorative Concrete, LLC ($55,194.70), Breakwater International ($60,000.00), Candy Apple, LLC ($90,000.00), Cypress Pipeline and Process Services ($154,603.80), Dan Bunkering (America) Inc. ($1,381,907.00), DHD Offshore Services, LLC ($118,521.85), Fugro USA Marine, Inc. ($79,364.06), Oceanwide Cyprus, Ltd. ($218,108.95), and Entier U.S.A., Inc. ($392,621.30)  As a condition of those resolutions, maritime lien claimants all assigned to Goliath their maritime lien rights, including but not limited to their maritime liens for "necessaries" against the appurtenances of the Vessel, including but not limited to the SD Unit.

40. Accordingly, Goliath now stands in the shoes of these maritime lien claimants, and possesses all of their rights to recover in full from the SD Unit as an appurtenance of the Vessel.

41. Under governing and controlling maritime law, including but not limited to the CIMLA, the maritime liens for "necessaries" against the SD Unit as an appurtenance of the Vessel prime and supersede any claims asserted by White Oak pursuant to the Sale Order.

42. Accordingly, Plaintiff requests that this Court enforce the terms of the Sale Order, and find that Plaintiff's liens on the SD Unit arising from the Bareboat Charter, Prior Bareboat Charters, and the assigned maritime lien rights, remain undisturbed and are first in priority notwithstanding any lien of White Oak, Debtors' sale of the SD Unit to White Oak, or White Oak Purchaser, LLC, and White Oak Purchaser, LLC's sale of the SD Unit to Triton.

## CLAIMS FOR RELIEF

### *Count I: Declaratory Judgment*

43. Plaintiff incorporates and re-alleges the allegations set forth in Paragraphs 1 through 42.

44. Plaintiff alleges it has valid first-priority liens on the SD Unit, which survived the free and clear sale in accordance with the Sale Order's terms (*See Sale Order* at ¶ 44.) and the subsequent sale(s).

45. Plaintiff requests that the Court make a determination of all the parties' rights in and to the SD Unit, including those of Plaintiff, Triton, White Oak, and any other party claiming an interest in the SD Unit.

46. Plaintiff requests that the Court enter judgment declaring that Plaintiff holds valid first priority liens on the SD Unit.

## ATTORNEYS FEES, PREJUDGMENT INTEREST, POST JUDGMENT INTEREST, AND COSTS

47. To the extent allowable by applicable law, Plaintiff requests that the Court award reasonable attorney's fees and costs, prejudgment interest accruing from the date of filing this Complaint, and post judgment interest.

## RESERVATION OF RIGHTS

48. Plaintiff reserves all rights and remedies against Defendants, and any other parties in interest as to its liens, or any of the related claims herein. The filing of this action is not intended to be a waiver of any rights or remedies or an election of remedies.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Goliath Offshore Holdings PTE, LTD respectfully requests that the Court: (i) enforce the Sale Order's provisions; (ii) find that Plaintiff's liens on the SD Unit are

valid and first priority liens; and (iii) grant Plaintiff such other and further relief the Court deems just and proper.

Dated: August 31, 2021

Respectfully submitted,

*/s/ Bruce J. Ruzinsky*
Bruce J. Ruzinsky
SBOT TX 17469425
bruzinsky@jw.com
Matt Cavenaugh
SBOT TX 24062656
mcavenaugh@jw.com
Dani Mondragon
SBOT TX 24096750
dmondragon@jw.com
**JACKSON WALKER L.L.P.**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
(713) 752-4204 – Telephone
(713) 305-4155– Facsimile

**and**

*/s/ Miles P. Clements*
Miles P. Clements
LA SB# 4184
miles.clements@phelps.com
Danielle Mashburn-Myrick
AL SB# 6798-F33F
danielle.mashburn-myrick@phelps.com
Zachry J. Ardoin
LA SB# 37575
zachry.ardoin@phelps.com
**PHELPS DUNBAR LLP**
P.O. Box 2727
Mobile, AL 36652-2727
504-584-9247 - Telephone
251-433-1820 - Facsimile

**COUNSEL FOR PLAINTIFF GOLIATH OFFSHORE HOLDINGS PTE, LTD**

29976803v.3 155814/00001